IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

## JOSHUA BROWN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 106367   Bobby R. McGee, Judge**

_____

### No. E2017-01788-CCA-R3-PC

_____


The Petitioner, Joshua Brown, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance of counsel and that his guilty pleas were unknowingly and involuntarily entered. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Joshua Brown.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On September 5, 2014, the Petitioner pled guilty in the Knox County Criminal Court to two counts of felony theft, for the theft of a chainsaw and a hedgetrimmer with a total value of more than $500 but less than $1,000 from Lowe's, a Class E felony. He also pled guilty to the theft of 22 cartons of cigarettes with a value of more than $1,000 but less than $10,000 from KenJo market, a Class D felony, and for two counts of misdemeanor theft. On that day, he was also sentenced to four years as a Range I standard offender in Case 102342, a case for which he pled guilty on September 20,

2013, to three felony thefts and three misdemeanor thefts.[1]  The Petitioner was sentenced to an effective two-year sentence as a Range I offender for the charges at issue to be imposed consecutive to the four-year sentence he received in Case 102342 for a total effective sentence of six years.  His sentence was suspended and he was placed in the Community Alternatives to Prison Program (CAPP).

On September 2, 2015, the Petitioner gave prison authorities his post-conviction petition to mail, and the petition was filed on September 16, 2015.  Counsel was appointed, and an amended post-conviction petition was filed on April 12, 2017, in which he alleged that trial counsel was ineffective and coerced him into pleading guilty to the two felonies and two misdemeanors on September 5, 2014.

At the post-conviction hearing on August 16, 2017, the Petitioner confirmed that trial counsel explained the two-year sentence that he would receive for the two felonies and two misdemeanors at issue, and he verified that he understood the sentence.  However, the Petitioner later testified that he did not understand that the two-year sentence would run consecutive to the four-year sentence for a total effective sentence of six years.

While the Petitioner acknowledged that trial counsel explained that he did not have to plead guilty and that he could receive a jury trial, the Petitioner alleged that trial counsel influenced his decision to plead guilty by informing the Petitioner that he would likely remain in jail for a year while he fought the theft charges, which the Petitioner characterized as a scare tactic.  The Petitioner also said that if he had not been told that there was a possibility that he would sit in jail for a year if the case went to trial, then he would not have pled guilty.  Further, the Petitioner testified that trial counsel told him that not pleading guilty might affect his acceptance into the Jellinek Center, a treatment facility, which the Petitioner asserted also greatly influenced his decision.  Specifically, the Petitioner alleged, "[t]hat's what made me be a dummy and, I guess, agree to a felony that I told [trial counsel] that I was innocent of."  The Petitioner was under the impression that if he and trial counsel had discussed his charges more, trial counsel would not have recommended that the Petitioner plead guilty.

The Petitioner acknowledged that he remembered his plea colloquy.  He testified that he had concerns about trial counsel's representation on the day of his plea and was "[n]ot really satisfied," but did not raise his concerns to the trial court.  He claimed that he began to regret taking the plea immediately after accepting it, but he did not inform trial counsel or the court of these regrets.

---

[1] The Petitioner is only challenging the guilty pleas entered on September 5, 2014, in his post-conviction petition.

When cross-examined, the Petitioner acknowledged that he was currently serving an eighteen-year sentence due to his career criminal status. The Petitioner also admitted that he had three previous felonies on his record that the court could have considered when sentencing him for the two felonies at issue in this case if he had gone to trial. The Petitioner believed that if he had not pled guilty in the instant case, then he would not have the requisite number of felonies to be considered a career criminal, he would be facing a Range II or III sentence, and he would have received a shorter sentence overall.

However, in addition to answering "yes" when asked if he was guilty during the plea hearing, the Petitioner admitted to stealing a chainsaw from Lowe's during his post-conviction hearing, but attempted to mitigate this admission by testifying that he did not steal a chainsaw and hedgetrimmer at the same time. Further, the Petitioner testified that his co-defendant in the cigarette case, Kendall Steiner, should not have pled guilty since Mr. Steiner was not with the Petitioner at KenJo market on the date when the cigarettes were stolen. The Petitioner maintained that he did not steal cigarettes from KenJo market, instead claiming that he only stole brake fluid. Additionally, the Petitioner testified that it was possible that a co-defendant took cigarettes from KenJo market, but not enough to amount to a Class D felony. However, the State reminded the Petitioner that his theft charges could be combined with a co-defendant's theft. The State also established that the Petitioner had a criminal history and was familiar with the criminal justice system, as he had previously pled guilty to misdemeanors and felonies and had admittedly been in and out of jail for "[m]ost of [his] life."

The Petitioner later acknowledged that it was his decision to plead guilty. Further, the Petitioner also admitted that he made statements during his plea colloquy which indicated that he was entering his plea freely, voluntarily, and knowingly and that he was satisfied with his representation.

Trial counsel testified that he had been practicing criminal law for fourteen years. Trial counsel said he was "waved down" by the Petitioner in jail on September 5, 2014, at which point the Petitioner wanted counsel to take his case immediately and get the Petitioner's plea entered that day. The Petitioner told counsel that he had a bed reserved at Jellinek Center and wanted the plea entered so that he could go there. Trial counsel said he was hesitant to enter a plea that day because he was not knowledgeable about the Petitioner's case. However, soon after the Petitioner waved him down, trial counsel discovered that a plea agreement had been worked out for the Petitioner to be placed on CAPP and to go to the Jellinek Center. Despite all of this, trial counsel cautioned the Petitioner that he felt uncomfortable proceeding with the plea that day, and he asked the Petitioner to allow him to request a reset. However, trial counsel said that the Petitioner was insistent that the plea be entered that day because the Petitioner was worried a delay

in entering the plea could result in his losing his place at the Jellinek Center. Therefore, trial counsel went forward with entering the plea. Trial counsel reiterated on re-direct that the decision to plead guilty was the Petitioner's, the Petitioner never mentioned being innocent prior to pleading guilty, and the cigarette case was not discussed. Trial counsel testified that possible defenses to the charges also were not discussed because the Petitioner was adamant that he wanted to plead guilty that day.

Following the post-conviction hearing, the court issued oral findings denying the petition. Specifically, the post-conviction court found that the "credibility issues" of the Petitioner "weighed in favor of [trial counsel]." Therefore, the court found that the Petitioner "failed to establish, by clear and convincing evidence, that counsel was deficient in any way," that the Petitioner did not establish that he was prejudiced, and that the Petitioner made the decision to plead guilty. This timely appeal followed.

## ANALYSIS

The Petitioner argues on appeal that trial counsel was ineffective and coerced him into entering guilty pleas, resulting in unknowing and involuntary guilty pleas. The State responds that the post-conviction court properly denied the petition on the basis that the Petitioner received effective assistance of counsel and the Petitioner's claims that trial counsel coerced him into entering the guilty pleas were "directly refuted by the factual findings of the post-conviction court." The State also asserts that the issue of voluntariness is waived because of a lack of support for the argument in the brief. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law,

is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S.

238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record fully supports the post-conviction court's findings that the Petitioner received effective assistance of counsel and entered his guilty pleas knowingly and voluntarily. While the Petitioner asserted that trial counsel coerced him into accepting the guilty pleas, the court rejected the Petitioner's allegations and accredited trial counsel's testimony that counsel wanted to reset the guilty plea hearing due to his retention as counsel that morning and lack of familiarity with the case, but the Petitioner insisted on pleading that day due to his fear that he might otherwise lose his spot at Jellinek Center. Trial counsel's decision to abide by the Petitioner's request after counseling the Petitioner and explaining the sentences that the Petitioner would receive if he pled guilty did not constitute deficient legal representation and did not prejudice the Petitioner. Moreover, the two-year sentence that the Petitioner received was the minimum sentence that he could have received for his theft charges. Additionally, the Petitioner was familiar with pleading guilty and the rights being given up by doing so, having pled guilty in a previous case on September 20, 2013.

Further, during the plea colloquy on September 5, 2014, the Petitioner acknowledged that he was entering into the plea agreement freely, voluntarily, and knowingly. The Petitioner agreed that he was pleading guilty because he was guilty. He further testified that he was satisfied with the services of his attorney and that he had no questions for the court. Therefore, the Petitioner has failed to meet his burden of demonstrating that he was prejudiced by the actions of trial counsel and that but for counsel's actions, he would not have pled guilty.

- 6 -

We conclude, therefore, that the evidence does not preponderate against the post-conviction court's findings that the Petitioner received effective assistance of counsel and that his guilty pleas were knowingly, voluntarily, and intelligently entered.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE